O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIE C. TOTTENHAM, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1650 |
| | § | |
| HARRIS COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Willie C. Tottenham, a Texas prison inmate, has filed a civil rights complaint against Harris County and various unnamed law enforcement officials.[1] The defendants have filed a motion for summary judgment supported by records and sworn statements. Tottenham has not filed a response. After reviewing the pleadings and evidence, the court will grant the motion and dismiss this action for the reasons set forth below.

### I. Plaintiff's Claims and Allegations

Tottenham claims that the defendants used excessive force in violation of the Fourth Amendment when they arrested him. He further complains that he was subjected to excessive force after he was taken to a hospital and subsequently transferred to the Harris County Jail. Tottenham contends that the defendants' actions were unprovoked and unnecessary and that he suffered severe injuries as a result.

---

[1] Although Tottenham is represented by counsel who has filed an original complaint (Docket Entry No. 1) and two amended complaints (Docket Entry Nos. 3 and 6), he fails to name any specific individuals in his pleadings.

Tottenham alleges that a Ft. Bend police officer shot him in the leg on or about April 30, 2002. The incident occurred in Harris County and he was arrested by Harris County peace officers who first took him to a hospital where his gunshot wound was treated. Tottenham was given strong pain medication, released from the hospital, and taken to jail. Sometime after his admission to the jail, several Harris County peace officers attacked and beat him so severely that his already wounded leg was broken. Tottenham contends that the individual defendants were acting within the course and scope of their duties as peace officers when they injured him. He further argues that the defendants acted willfully, deliberately, maliciously or with reckless disregard to his constitutional rights.

Tottenham asserts that Harris County is liable because it owed a duty to its jail inmates to exercise ordinary care in hiring and supervising jail personnel. He claims that there were established procedures and customs which permitted Harris County employees to act with deliberate indifference to the inmates' constitutional rights with regard to use of force and medical care. He also argues that Harris County failed to use ordinary care by failing to investigate job applicants and by negligently failing to oversee them after they were hired. Tottenham argues that Harris County is liable under the doctrine of *respondeat superior*.

Tottenham seeks $ 250,000 in monetary damages for medical expenses, physical pain, physical impairment, disfigurement, and mental anguish. He also seeks $ 2,000,000 in punitive damages for the defendants' willful and malicious acts. Finally, Tottenham seeks an award of attorney fees and costs under 42 U.S.C. § 1988.

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party

is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Id.*

The court construes the evidence such that the nonmoving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Id*.

## III. The Defendants' Arguments and Evidence

The defendants do not dispute that Tottenham suffered serious injuries. However, they argue that the record shows that they did not use excessive force against him and that their actions were objectively reasonable in light of the facts and circumstances facing them. They also assert that there is no evidence demonstrating that Harris County had a policy or custom which authorized or condoned assaults or use of excessive force against suspects or detainees. The defendants present the following evidence (attached to Docket Entry No. 16, Motion for Summary Judgment) in support of their argument:

| | |
|---|---|
| Exhibit 1 | Affidavit of Mario Gehret, Missouri City Police Officer |
| Exhibit 2 | Tottenham's Harris County Jail Card |
| Exhibit 3 | Indictment Against Tottenham, Aggravated Assault of a Police Officer |
| Exhibit 4 | Affidavit of Jason Lemoine, Galveston Firefighter, former Harris County Jailer |
| Exhibit 5 | Affidavit of James Johnson, Harris County Jail Inmate |
| Exhibit 6 | Referral of Tottenham for Psychiatric Screening |
| Exhibit 7 | Affidavit of William Miers, Harris County Sheriff's Deputy |
| Exhibit 8 | Affidavit of Waymon L. Dendy, Harris County Sheriff's Deputy |
| Exhibit 9 | Affidavit of Anthony McCullough, Harris County Sheriff's Deputy |
| Exhibit 10 | Affidavit of Sergeant William Thomas Kennedy, Harris County Sheriff's Department |
| Exhibit 12[2] | Excerpts from Tottenham's Oral Deposition |
| Exhibit 13 | Harris County Sheriff's Department Manual, Rule 1.6(C) and (E) and Chapter III, 1.0 Use of Force |

---

[2] Exhibit 11 is a copy of Tottenham's Second Amended Complaint (Docket Entry No. 6).

| | |
|---|---|
| Exhibit 14 | Harris County Sheriff's Department Standard Operating Procedures for Inmate Management |
| Exhibit 15 | Affidavit of Lieutenant Richard Ricks, Harris County Sheriff's Department, Internal Affairs Division |
| Exhibit 16 | Tottenham's Harris County Jail Medical Records |

The records establish that at approximately 11:32 p.m. on April 27, 2002, Missouri City Officer Mario Gehret ordered Tottenham to pull his vehicle over after Tottenham had made an illegal U-turn and drove against traffic in Harris County, Texas. *See* Exhibit 1. Officer Gehret approached Tottenham's vehicle and asked him for his driver's license and insurance ID card. Officer Gehret smelled alcohol on Tottenham's breath and saw what appeared to be a glass of beer in the console of the car.

Officer Gehret requested Tottenham's permission to search his vehicle. Although Tottenham agreed to the search, he became very nervous, and Gehret instructed him to get out so he could search him for weapons. During the pat-down search, Gehret felt a gun in the front of Tottenham's bib overalls. Gehret immediately used his radio to call for police backup units. Meanwhile, Tottenham reached for his gun, and Gehret pulled him to the ground to keep him from grabbing it. Despite Gehret's efforts, Tottenham managed to pull out his gun. Realizing that he was in danger of being shot, Gehret jumped back, pulled out his service weapon, and fired twice at Tottenham. One of the shots hit Tottenham in the right thigh. Although Tottenham had been wounded, he ignored Gehret's orders. Instead, he threw his gun into the grass along the road. Eventually, help arrived. The gun was retrieved, and Tottenham was arrested and taken to a hospital for treatment. He was then taken to jail where he was charged with attempted capital murder of a police officer. Exhibit 2. Approximately twenty months later, on February 11, 2004, a jury found Tottenham guilty of aggravated assault of a police officer by using or exhibiting a firearm, enhanced by two prior felony convictions. *See* Exhibit

3. Tottenham is currently serving a 60 year sentence pursuant to the conviction. The district court's judgment is currently on appeal. *Tottenham v. State*, No. 14-04-00143-CR (Tex. App. – Houston [14th Dist] *filed* Feb. 17, 2004).

At approximately 1:25 a.m. on May 6, 2002, while in jail awaiting trial, Tottenham reported to Deputy Jason Lemoine that he was experiencing difficulties with another inmate in his living area and requested a transfer to another cellblock. Exhibit 4. Other inmates stated that Tottenham was causing a problem and had talked about killing himself. Lemoine responded that he would file a report. He then moved Tottenham to the day room area of the cell block while he completed the paperwork. At approximately 2 a.m., several inmates shouted for Lemoine. When Lemoine came back, he saw inmate James Johnson holding down Tottenham. Lemoine ordered Johnson to release Tottenham and leave the cellblock.

Johnson complied with Lemoine's orders and explained that he was restraining Tottenham from hurting himself. *Id.*; Exhibit 5. Johnson and the other inmates reported Tottenham had continued talking about killing himself and that he was attempting to impale himself on a piece of his metal walker[3] which had been sharpened. Lemoine took Tottenham to a multi-purpose room and then confiscated the walker to prevent him from further injuring himself. Exhibit 4.

Tottenham was then taken to the clinic for a dressing change to his right leg. When he was returned to the multipurpose room, Lemoine interviewed the other inmates in his cellblock. They reported that Tottenham was paranoid and was continuously talking about suicide. Although Tottenham denied the allegations, Lemoine filled out a psychiatric report and referral for Tottenham which detailed his attempts to harm himself.

---

[3] Harris County had issued Tottenham a walker to use as a support in getting around the jail.

At approximately 4 a.m. that same morning, Deputy William Miers was writing a report when he heard a loud noise from the multi-purpose room where Tottenham had been confined. Exhibit 7. When Miers entered the room, he found Tottenham standing on a table attempting to remove metal components from the ceiling. Miers asked Tottenham what he was doing. Instead of responding, Tottenham rapidly advanced towards Miers and grabbed him on the upper part of his body. Miers blocked Tottenham's assault and called for help from Deputy Waymon Dendy. Dendy and Miers attempted to subdue Tottenham which caused him to fall to the ground.

Deputy Michael McCullough and Sergeant William Kennedy assisted in restraining Tottenham. Exhibits 8, 9, and 10. Although physical force was necessary in subduing Tottenham, no one struck or abused him during the incident. After he was restrained, Tottenham began to complain of pain in his right leg. Miers procured a wheelchair for Tottenham and Kennedy, Lemoine, and Miers used it to transport him to the clinic for an examination. The x-ray revealed that Tottenham suffered a fracture near the gunshot wound. Exhibit 10.

Tottenham was taken to LBJ hospital where doctors operated to repair his leg. Exhibit 16, pages 1, 33-35. He was then returned to the Harris County Jail where he continued to receive treatment and medication although the medications were discontinued for a period because Tottenham refused to take them. *See* Exhibit 16, pages 27, 111. He was later returned to LBJ for further work on his leg. Exhibit 16, page 25. In addition, Tottenham was provided with psychiatric help. *See* Exhibit 16, page 30.

## IV. <u>Analysis</u>

Tottenham contends that he was subjected to use of excessive force when he was arrested and while he was in jail. He also generally claims that he was denied adequate medical care. He asserts

that the individual defendants are liable in their personal capacities and he contends that Harris County is liable as a government entity. To state a claim under section 1983, Tottenham must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000), *citing Lefall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). There is no cause of action if Tottenham does not show that the alleged deprivation is fairly attributable to the state's involvement. *Cinel v. Connick* 15 F.3d 1338, 1343 (5th Cir. 1994).

### A. Use of Excessive Force

Tottenham alleges two incidents where law enforcement officials used excessive force against him. The first assault is purported to have occurred during Tottenham's arrest and must be analyzed under the Fourth Amendment. *Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989); *Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998). The second incident in question occurred while Tottenham was in jail and must be analyzed under the Eighth Amendment because he was a convicted felon on parole (*See* Exhibit 2) at that time. *See Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996).

#### 1. Use of Force During the Arrest

In order for Tottenham to establish his claim that law officials used excessive force against him during the arrest he must prove that he "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998), *citing Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). When determining whether or not the use of force was excessive, the courts are mindful of the fact that police officers are often faced with difficult situations which demand split-second decisions. *Graham*, 109 S.Ct. at 1872. Consequently, the court will view the circumstances

through the eyes of the officers at the scene and will not substitute its own hindsight in determining whether the defendants' acts were reasonable. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id. quoting Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir. 1973). The force the defendant used against Tottenham will be considered in context of the problem the defendant was facing when he used the force. *Ikerd*, 101 F.3d at 434.

The record shows that Tottenham suffered a serious gunshot wound when he was arrested. However, Officer Gehret attempted to use nonviolent means to control Tottenham before resorting to the use of a weapon. Tottenham refused to comply with the officer's orders and struggled with the officer when he tried to take Tottenham's gun away from him. Gehret shot Tottenham only after he had pulled his gun on the officer. Gehret had reason to feel that he was in danger of being shot and had to act quickly to avoid grave injury or even death. *See Colston v. Barnhart*, 130 F.3d 96 (5th Cir. 1997). Under the given circumstances, Officer Gehret was objectively reasonable in using his gun to shoot Tottenham in order to prevent himself from being shot. *Id.* at 100. Tottenham has not alleged that any other officers who participated in the arrest were personally involved in the shooting. Consequently, none of the others can be held liable. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Moreover, Tottenham was subsequently found guilty of assaulting Officer Gehret. A suit for damages under 42 U.S.C. §1983 must be dismissed when the plaintiff is attacking the validity of his conviction and has not shown that the conviction has been overturned. *Heck v. Humphrey*, 114 S.Ct. 2364, 2372 (1994). Tottenham's allegation that Gehret used excessive force against him during the arrest is inconsistent with the state criminal court's judgment. *Hainze v. Richards*, 207 F.3d 795, 798

(5th Cir. 2000); *Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999). Consequently, his claim against Gehret is barred unless the conviction is overturned on appeal. *Id*.

### 2. Use of Force in Jail

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits jailers from wantonly injuring or beating convicted felons while they are incarcerated. *See Whitley v. Albers*, 106 S.Ct. 1078, 1084 (1986). However, guards are authorized, and in many instances are required, to use reasonable force to maintain order and safety. *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998). With regard to the force that the Harris County Jail officers used to subdue Tottenham on May 6, 2002, the core question is whether it was used in a good effort to maintain or restore order or in a malicious or sadistic attempt to inflict pain. *Hudson v. McMillian*, 112 S.Ct. 995, 999 (1992).

The facts establish that Tottenham exhibited psychotic behavior before the incident and was apparently trying to harm himself. Jail officials had taken away possible weapons and were in the process of moving him to a safer area. Despite these actions, Tottenham continued his erratic and destructive activity. When Deputy Miers attempted to intervene, Tottenham assaulted him. The other jail officers assisted Miers in subduing an irrational, violent, and dangerous prisoner.

Miers and the other jailers had to respond quickly to Tottenham's aggressive and dangerous actions, and this court will not second guess the guards' decisions regarding the amount of force that was required to subdue Tottenham. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (guards are entitled to wide deference regarding what is necessary to maintain order), *quoting Hudson*, 112 S.Ct. at 995. The actions of Miers and the other jailers were a clearly justified response to Tottenham's behavior which posed a serious threat to their personal safety as well as that of Tottenham's own health and safety. *Baldwin*, 137 F.3d at 840. Tottenham's fractured leg, although a regrettable result of the officers' efforts to subdue him, is not an actionable injury. *See Brothers v. Klevenhagen*, 28 F.3d 452

(5th Cir. 1994) (deputies did not violate jail inmate's constitutional rights when they fatally shot him to prevent his escape). In light of the situation facing the defendants, this court cannot find that their actions violated Tottenham's constitutional rights. *Baldwin*, 137 F.3d at 840.

### B. Medical Care

Tottenham asserts that he was deprived of adequate medical attention for his injured leg. Arrestees and jail inmates have a constitutional right to basic medical treatment when they have been injured. *Estelle v. Gamble*, 97 S.Ct. 285, 290 (1976); *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Nerren v. Livingston Police Dept.*, 86 F.3d 469 (5th Cir. 1996), *citing Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Generally, a plaintiff claiming that he was denied medical care in violation of his civil rights must show that the defendants were deliberately indifferent to his serious health needs. *Gamble*, 97 S.Ct. at 292. Evidence of negligence does not support a finding of deliberate indifference. *Id.* The plaintiff must present facts which show that the defendants were (1) aware of facts from which an inference of an excessive risk to the plaintiff's health or safety could be drawn; (2) that they actually inferred that there was such a risk; and (3) they knowingly failed to take action to remove or lessen the risk. *See Farmer v. Brennan*, 114 S.Ct. 1970 (1994); *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997); *Hare v. City of Corinth*, 74 F.3d 633, 647-48 (5th Cir.1996).

Tottenham's pleadings do not contain any specific facts which demonstrate that the defendants were deliberately indifferent to his need for medical attention. He merely relies on conclusory statements. Such unsupported declarations do not establish a claim under 42 U.S.C. § 1983. *See Hale v. Harney,* 786 F.2d 688, 690 (5th Cir. 1986).

Apart from Tottenham's inadequate pleading regarding medical care, the defendants have presented medical notes and charts showing that he was extensively examined, treated, and medicated.

The defendants' undisputed record evidence rebuts Tottenham's claims of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Consequently, Tottenham's unsupported claim regarding medical care is subject to dismissal.

### C. Claims Against Harris County

Tottenham has sued Harris County arguing that the County's employees violated his civil rights pursuant to official policies which permitted such activities. He further claims that Harris County was negligent in screening and hiring its employees and is liable under the doctrine of *respondeat superior*.

Under section 1983, a county cannot be held liable under the doctrine of *respondeat superior* simply because it employed an official who violated a plaintiff's civil rights. *Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997). However, a county could be held liable if the harm at issue was the result of an official policy or custom which violates the constitutional rights of the plaintiff. *Id.* To succeed in such a claim, Tottenham must identify a Harris County policy that caused him to be subjected to a deprivation of his constitutional rights. *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985).

Like his pleadings regarding medical care, Tottenham relies on conclusory statements to promote his argument that his rights were violated by Harris County. Moreover, when asked during an oral deposition to present any proof of Harris County policies which allowed the use of excessive force, Tottenham admitted that he was not aware of any other incident. Exhibit 12, page 61. He further stated that he had no documentary proof of any policy and that he was only aware of what had happened to him. *Id.* This court has previously concluded that the force used against Tottenham did not violate his constitutional rights and that he was not denied adequate medical care for his injuries. Moreover, even if a violation had been shown, there was no evidence of a widespread pattern of constitutional

12

abuses to support Tottenham's allegation that he was injured pursuant to an official policy or a widespread practice in Harris County. *City of Oklahoma City v. Tuttle*, 105 S.Ct. 2427, 2436 (1985) (allegations of isolated instances of deprivations alone do not establish liability of the policy maker). In addition, the defendants have provided copies of written policies (Docket Entry Nos. 13 and 14) which prohibit the conduct alleged by Tottenham. Consequently, Tottenham has failed to establish that he was harmed pursuant to an official policy of Harris County. *See Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002).

Tottenham's allegations that he was harmed as a result of Harris County's employment practices is also unsupported. He has failed to identify any violation of his constitutional rights which could be attributed to a faulty hiring practice or a failure to adequately train personnel. Without such a showing, Tottenham's claims against Harris County must be dismissed. *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 286-87 (5th Cir. 2002).

The defendants have presented evidence clearly demonstrating that there is no genuine issue of dispute regarding the use of force against Tottenham or the medical treatment provided him. The record demonstrates that the force used against Tottenham was reasonable under the circumstances and that no official was deliberately indifferent to his serious medical needs. Moreover, Harris County is not liable pursuant to any policies, hiring procedures or supervisory practices.

The motion for summary judgment (Docket Entry 16) is **GRANTED**, and this action is **DISMISSED** under FED. R. CIV. P. 56.

### V. Conclusion and Order

The court **ORDERS** the following:

1. The defendants' Motion for Summary Judgment (Docket Entry 16) is **GRANTED**.

2. The defendants' Motion to Compel the Plaintiff to Respond to Interrogatories and Requests for Production (Docket Entry No. 18) is **DENIED.**

3. Tottenham's Motion for an Extension of Time and to Enter a New Scheduling Order (Docket Entry No. 19) is **DENIED**.

4. This action is **DISMISSED** with prejudice under FED. R. CIV. P. 56(c).

**SIGNED** on this 8th day of July, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE